UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| BRIAN KENDRICK,<br><br>                    Petitioner,<br><br>              vs.<br><br>SUPERINTENDENT, Wabash Valley<br>Correctional Facility,<br><br>                    Respondent. | No. 2:15-cv-00404-WTL-DKL |

### Entry Discussing Petition for Writ of Habeas
### Corpus and Denying Certificate of Appealability

Brian Kendrick is serving the executed portions of his 2010 Marion County convictions for attempted murder, robbery and possession of a handgun without a license. For the reasons explained in this Entry, Kendrick's petition for a writ of habeas corpus must be **denied** and the action dismissed with prejudice. In addition, the Court finds that pending motions should be denied and that a certificate of appealability should not issue.

### I. Pending Motions

### A. The Second Motion to Dismiss (Strike)

The State of Indiana opposes Kendrick's habeas petition through its Return to Order to Show Cause, filed on February 9, 2016. Kendrick has filed a second motion to dismiss (strike) this Return to Order to Show Cause on three grounds:

- Kendrick first points out that the Return misdescribes the offenses of which he was convicted. Specifically, page 1 of that Return accurately recites that Kendrick challenges his state convictions for attempted murder, bank robbery, and carrying a handgun without a license, while the top of page 4 of that Return incorrectly states that Kendrick is challenging "his 1999 Marion County, Indiana convictions for felony murder and robbery."

- Kendrick characterizes this latter description as "false and fabricated evidence," but the fact is that the error on page 4 is a scrivener's error which he has called to the Court's attention and which has not affected the resolution of his habeas petition. Relatedly, Kendrick explains that he does not seek, and has never sought, federal habeas relief with respect to 1999 convictions for felony murder and robbery. In fact, he points out that his only convictions are for the offenses specified in the habeas petition, which as noted the Return accurately lists on page 1. This assertion of ancillary matters is not relevant to the resolution of his habeas petition.

- The second point Kendrick makes is that a factual description in the appellate decision affirming his convictions is repeated in a section of the Return where that decision is quoted and is incorrect. There are two responses: first, the quotation is accurate and even if the account given by the Indiana Court of Appeals is inaccurate this is no reason to strike the Return to Order to Show Cause; second, as will be made clear, the ownership of the blue Trailblazer which is described in the appellate opinion is not relevant to the claim which Kendrick makes in his habeas petition.

- Kendrick's third reason for seeking to have the Return stricken is that page 1 of the Return erroneously describes the convictions as having been entered in 2008, whereas in fact he was charged in 2008 and convicted in 2010 after a 5-day jury trial. This error in linking his convictions to the year "2008" instead of "2010" is inconsequential. This sort of error does not change the record and does not change the facts. The Court will not permit an inconsequential typing error to derail the prompt resolution of Kendrick's petition.

Kendrick sums up his second motion to dismiss (strike) by offering the maxim, *falsus in uno, falsus in omnibus*, which is a Latin phrase meaning "false in one thing, false in everything." The principle "is of highly doubtful logic," *Dicenso v. Michaels*, 668 F.2d 633, 634 (1st Cir. 1982) (citing *United States v. Taglianetti*, 456 F.2d 1055, 1056 (1st Cir 1972)); *see also Virginian Ry. Co. v. Armentrout*, 166 F.2d 400, 405 (4th Cir. 1948)("the harsh falsus in uno falsus in omnibus rule . . . has little or no place in modern jurisprudence"), and does not in this case warrant the rejection of a pleading on the ground that the pleading is imperfect. After all, "Rule 8(f) demands that '[a]ll pleadings shall be so construed [by a district court] as to do substantial justice.' Fed.R.Civ.P. 8(f)." *Ross Bros. Const. Co. v. Int'l Steel Servs., Inc.*, 283 F.3d 867, 872 (7th Cir. 2002). The principle Kendrick offers is a permissible rule for judging the credibility of evidence, *N. L. R. B. v. N. Metal Co.*, 440 F.2d 881, 889 (3d Cir. 1971)("'Falsus in uno, falsus in omnibus' is merely permissive and

not mandatory in a trial examiner's evaluation of credibility"); *Shecil v. United States*, 226 F. 184, 187 (7th Cir. 1915) ("The maxim . . . has to do solely with the weight, not with the admissibility, of the evidence."), and the Return is *not* evidence, *Shreve v. Franklin Cty., Ohio*, 743 F.3d 126, 136 (6th Cir. 2014) ("*pleadings are not evidence. Compare* Fed.R.Civ.P. 8 (defining pleadings) *with* Fed.R.Evid. 401 (defining relevant evidence)") (emphasis in original), nor has counsel for the respondent become a witness by authoring and filing the Return. In the circumstances of this case, *falsus in uno, falsus in omnibus* does not require that the Return to Order to Show Cause filed on February 9, 2016 be dismissed, stricken, disregarded or rejected.

Based on the foregoing, therefore, Kendrick's second motion to dismiss (strike) the Return to Order to Show Cause [dkt 24] is **denied.**

### B. Motion for Appointment of Counsel

On April 5, 2016, Kendrick filed a motion for appointment of counsel and a supporting brief. This was a month after Kendrick filed his reply to the Return to Order to Show Cause. Filing the reply caused the case to be fully at issue. Kendrick's concerns in his motion for appointment of counsel are misplaced. The case is fully briefed. No evidentiary hearing is required because such a proceeding is only necessary when a more extensive factual record must be compiled to decide an issue. *See Newell v. Hanks*, 283 F.3d 827, 838 (7th Cir. 2002). No additional proceedings are pending, sought, or warranted.

"Whenever . . . the court determines that the interests of justice so require, representation may be provided for any financially eligible person who . . . is seeking relief under section 2241, 2254, or 2255 of title 28." 18 U.S.C. § 3006A(a)(2)(B). Based on the circumstances just reviewed, this is not such a case. Accordingly, Kendrick's motion for the appointment of counsel [dkt 25] is **denied.**

## II. The Petition for Writ of Habeas Corpus

### A. Background

Crediting evidence favorable to the prosecution at trial, *Willard v. Pearson,* 823 F.2d 1141, 1150 (7th Cir. 1987)(noting that a federal habeas court "must assume that the jury resolved all evidentiary conflicts and found all reasonable inferences in the state's favor") (citing *Jackson v. Virginia,* 443 U.S. 307, 326 (1979)), Kendrick and his confederates robbed a bank on the east side of Indianapolis on the morning of April 22, 2008, in the course of which he shot pregnant bank teller Katherine Shuffield in the abdomen. *Kendrick v. State*, 947 N.E.2d 509 (Ind.Ct.App. 2011). One of the arguments presented in Kendrick's direct appeal was that the trial court had erred in finding witness Gilberto Mendez unavailable and permitting the State's use at trial of his defense-taken deposition. That is the claim Kendrick presents in this action for habeas corpus relief.

### B. Applicable Law

A federal court may grant habeas relief only if the petitioner demonstrates that he is in custody "in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2254(a) (1996). Kendrick filed his habeas petition after the effective date of the Antiterrorism and Effective Death Penalty Act (AEDPA). His petition, therefore, is subject to AEDPA. *See Lindh v. Murphy,* 521 U.S. 320, 336 (1997).

AEDPA "place[s] a new constraint" on the ability of a federal court to grant habeas corpus relief to a state prisoner "with respect to claims adjudicated on the merits in state court." *Williams v. Taylor,* 529 U.S. 362, 412 (2000). The requirements of AEDPA "create an independent, high standard to be met before a federal court may issue a writ of habeas corpus to set aside state-court rulings," *Uttecht v. Brown,* 555 U.S. 1, 10 (2007) (citations omitted) and reflect "the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not

a substitute for ordinary error correction through appeal." *Harrington v. Richter,* 131 S. Ct. 770, 786 (2011) (quoting *Jackson v. Virginia,* 443 U.S. 307, 332 n.5 (1979)). In short, the standard of § 2254(d) is "difficult to meet . . . because it was meant to be." *Burt v. Titlow,* 134 S. Ct. 10, 16 (2013) (internal quotation marks omitted).

Our Court of Appeals has explicated the standard to be applied in ruling on a petition seeking relief under this statute:

> When a state court has ruled on the merits of a habeas claim, our review is circumscribed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See* 28 U.S.C. § 2254(d); *Harrington v. Richter,* 131 S. Ct. 770, 783–84, 178 L.Ed.2d 624 (2011). Under AEDPA, we may grant relief only if the state court's decision on the merits "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (2). Plainly stated, these are demanding standards.

*Atkins v. Zenk*, 667 F.3d 939, 943-44 (7th Cir. 2012); *See also Bailey v. Lemke*, 735 F.3d 945, 949 (7th Cir. 2013).

"[U]nder AEDPA, federal courts do not independently analyze the petitioner's claims; federal courts are limited to reviewing the relevant state court ruling on the claims." *Rever v. Acevedo*, 590 F.3d 533, 536 (7th Cir. 2010). "We ask only whether the [state court's] decision was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,' or 'was based on an unreasonable determination of facts in light of the evidence presented in the State court proceeding.'" *O'Quinn v. Spiller*, 806 F.3d 974, 977 (7th Cir. 2015)(quoting 28 U.S.C. § 2254(d)(1), (2)). As one court has explained, "[i]t is this Court's obligation to focus "on the state court decision that previously addressed the claims rather than the petitioner's freestanding claims themselves." *McLee v. Angelone,* 967 F.Supp. 152, 156 (E.D.Va. 1997).

### C. Discussion

As noted, Kendrick's claim in this action is that his Sixth Amendment right to confrontation was violated through the use of the pre-trial deposition of Gilberto Mendez, which in turn was permitted only after the trial court determined that Mendez was not available to appear in person at trial.

The Sixth Amendment's Confrontation Clause provides that: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const, amend. VI. Under the Confrontation Clause, prior testimony may be admitted against a defendant only if the witness is unavailable to testify and the defendant had a prior opportunity to cross-examine the witness. *Crawford v. Washington,* 541 U.S. 36, 53–54 (2004). A witness is "unavailable" when the prosecution can demonstrate that it made a "good-faith effort to obtain [the witness's] presence at trial." *Barber v. Page,* 390 U.S. 719, 724–25 (1968). Conversely, "[t]he lengths to which the prosecution must go to produce a witness . . . is a question of reasonableness." *Hardy v. Cross,* 132 S. Ct. 490, 494 (2011) (internal quotation marks omitted). The Confrontation Clause "does not require the prosecution to exhaust every avenue of inquiry, no matter how unpromising," as it is "always possible to think of additional steps that the prosecution might have taken" to produce a witness at trial. *Id. at* 132 S. Ct. 490, 495 (2011) (per curiam).

It is the State's burden to produce evidence demonstrating unavailability, which it can do by detailing its efforts to procure the witness's presence and showing that despite its efforts, the witness remained unavailable. *See United States v. Matus–Zayas,* 655 F.3d 1092, 1102 (9th Cir. 2011). The Supreme Court's decision in *Cross* is instructive. There, the victim had testified at the habeas petitioner's first trial but could not be located to testify at the retrial. *See Cross,* 132 S. Ct.

at 492. The prosecution's pre-trial efforts to locate the witness had included personal visits to the victim's home at all hours of the day and night about once every three days; visits to her father's home; a visit to an ex-boyfriend's home forty miles away; in-person and phone conversations with her relatives in English and Spanish; and inquiries to her school, immigration authorities, and numerous state and county agencies and prisons. *See id.* at 492–93. The state appeals court upheld the trial court's finding that the State had conducted a good-faith, diligent search for the victim. In so ruling, the state appeals court found it "evident" that the victim "was in hiding and did not want to be located." *See id.* at 493 (internal quotation marks omitted). The Supreme Court held that the determination that the State had conducted the requisite good-faith search was not an unreasonable application of its Confrontation Clause precedents. *See id.* at 494.

As the Supreme Court has observed, when a witness disappears before trial it is always possible to think of additional steps the prosecution might have taken to secure his appearance, *see Roberts,* 448 U.S. at 75, but "the Sixth Amendment does not require the prosecution to exhaust every avenue of inquiry, no matter how unpromising," *Cross,* 132 S. Ct. at 495.

The state court disposition of Kendrick's claim was reasonable. The Indiana Court of Appeals first recognized that "'[a] witness is unavailable for purposes of the Confrontation Clause requirement only if the prosecution has made a good faith effort to obtain the witness's presence at trial.'" *Kendrick v. State*, 947 N.E.2d 509, 515 (Ind.Ct.App. 2011)(quoting *Garner v. State,* 777 N.E.2d 721, 724 (Ind. 2002)(citing *Jackson v. State*, 735 N.E.2d 1146, 1151 (Ind. 2000)). This is a recognition of the applicable federal constitutional standard. *Barber v. Page,* 390 U.S. 719, 724–25 (1968).

As to the application of this standard, the Indiana Court of Appeals evaluated the claim in these terms:

The issue is not whether the witness was out-of-state at the time of trial, but whether the State made a good faith effort to obtain the absent witness's attendance at trial. *Garner v. State,* 777 N.E.2d 721. "Even if there is only a remote possibility that an affirmative measure might produce the declarant at trial, the good faith obligation may demand effectuation. Reasonableness is the test that limits the extent of alternatives the State must exhaust." *Id.* at 724–25 (citation omitted).

As found by the trial court, Kendrick's argument that the State procured the witness's absence is without merit. The record establishes that Mendez was subpoenaed by Kendrick and the State the week before trial, which began on Monday, January 25, 2010. Around noon on Wednesday, January 27, one of the State's investigators, John Koss, went to Mendez's home to check on his availability for trial. Mendez informed Koss that he thought the State needed him at 1:00 that day. After calling and speaking with the deputy prosecutor, Koss informed Mendez that he was not needed that day and to standby at home Wednesday and Thursday. Koss told him to wait for a call when and if he was needed as a witness.

Shortly thereafter it was discovered that there was a communication glitch. The defense had requested Mendez's appearance at 1:00, not the State. Koss and the deputy prosecutor did not realize this when they told him he would not be needed yet. An investigator for the defense, Dan Bailey, called Mendez around 12:45 to make sure he was coming. Upon learning of the confusion, Bailey informed Mendez that Koss was with the prosecutor's office and did not represent the defense. Bailey told him that he would talk with the attorneys and would call him back.

Early Thursday morning the parties discovered that Mendez had left town and did not plan to be back until the following week. Mendez spoke with Bailey later that day and stated that it would be impossible for him to come back by Friday because he was working in Kentucky. Although Mendez indicated that he could be back by Saturday, the parties and the court agreed that was not desirable. On Friday morning Mendez gave conflicting information to the parties, first indicating that he could be in court by 3:00 p.m. and then stating that he could not make it back that day because he would lose money. Under the circumstances, the prosecution expressed concern that Mendez would even show up on Saturday morning if given the chance.

After multiple lengthy discussions and presentation of evidence on the matter, the trial court ruled as follows:

> I've wanted to finish this case today all week. Mr. Mendez has proven to be illusive for whatever reason. I heard your story, [defense counsel] but I also hear [sic] Mr. Koss' testimony that he told him to be on standby—that he wouldn't need him Wednesday. I do not want to bring the jury back a sixth day unless I absolutely have to and all indications up to right now were that we could get this trial in and I think the jury has an anticipation of getting this trial

> in today. Given these circumstances I'm gonna allow the deposition. I'm gonna find Mr. Mendez is not available . . . .

*Transcript* at 1107–08.

> Despite unintentional miscommunication between the State and Mendez, the record reveals that the State made a good faith effort to obtain Mendez's presence at trial. Specifically, the State hand delivered the subpoena to Mendez's residence the week before the trial and then sent Koss out to Mendez's home on the Wednesday of trial to ensure his availability. Further, Koss directed Mendez to standby and wait for further instructions on Wednesday or Thursday. Despite this direct communication, as well as other communications with the defense, Mendez left the State by early Thursday morning. Although Mendez maintained contact with the parties over his cell phone, he refused to divulge the name of his employer and repeatedly complained about losing wages by being a witness. Under the circumstances, the trial court did not abuse its discretion in finding Mendez unavailable for trial.

*Kendrick v. State*, 947 N.E.2d 509, 516-17 (Ind.Ct.App. 2011)(footnote omitted).

The decision of the Indiana Court of Appeals was reasonable because that court (1) recognized the pertinent circumstances leading up to the absence of Mendez and the trial court's ruling, and (2) concluded from those circumstances that "the State made a good faith effort to obtain Mendez's presence at trial." "Under AEDPA, if the state-court decision was reasonable, it cannot be disturbed." *Cross*, 132 S. Ct. at 495.

### D. Conclusion

This Court has carefully reviewed the state record in light of Kendrick's claim and has given such consideration to his claim as the limited scope of its review in a habeas corpus proceeding permits. This does not warrant relief in light of the deferential standard required by the AEDPA. *Harrington v. Richter*, 562 U.S. 86, 101 (2011)("A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision.")(quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *Stern v. Meisner*, 812 F.3d 606, 610 (7th Cir. 2016) ("In other words, [the habeas

petitioner] must show a complete absence of reasonableness in the [state] appellate court's decision.")(citing *Harrington,* 562 U.S. at 98).

Kendrick's petition for a writ of habeas is therefore **denied.** Judgment consistent with this Entry shall now issue.

### III. Certificate of Appealability

Pursuant to Rule 11(a) of the *Rules Governing Section 2254 Cases*, the Court finds that Kendrick has failed to show that reasonable jurists would find "it debatable whether the petition states a valid claim of the denial of a constitutional right." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The Court therefore **declines** to issue a certificate of appealability.

IT IS SO ORDERED.

Date:  4/13/16

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Distribution:

Electronically Registered Counsel

BRIAN  KENDRICK  DOC #197155
WABASH VALLEY CORRECTIONAL FACILITY
Electronic Service Participant – Court Only